IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JAMALLE DONNTAI GIBSON,** | § | |
| **(TDCJ No. 01964551),** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 4:23-cv-016-O |
| | § | |
| **PHIL SORRELLS, Tarrant** | § | |
| **County Criminal District** | § | |
| **Attorney, et al.,** | § | |
| Defendant. | § | |

**OPINION and ORDER GRANTING MOTION TO DISMISS**

Now pending is the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and incorporated brief filed by Defendant Phil Sorrells ("Sorrells"), Criminal District Attorney, Tarrant County, Texas. Mot., ECF No. 6. Sorrells supported the motion with an appendix. ECF Nos. 7, 7-1 through 7-6. Plaintiff Jamalle Donntai Gibson ("Gibson") filed a response (ECF 10), and Sorrells filed a reply (ECF No. 12). After considering the relief sought by Gibson, the record, the briefing and the applicable law, the Court finds that the Defendant's motion to dismiss must be **GRANTED.**

**I.    NATURE OF CLAIMS**

Before a district court adjudicates the merits of a pro se prisoner's claim, it should review and decipher the underlying nature and essence of the claim, regardless of the title affixed to the suit. *See Odom v. West*, 174 F.3d 198, 1999 WL 153008, at *1 (5th Cir. 1999) (citing *United States v. Santora*, 711 F.2d 41, 42 n.1 (5th Cir. 1983)). A § 1983 action is the appropriate remedy for recovering damages for illegal state action. *Taylor v. Cass Cnty. Dist. Ct.*, 178 F.3d 1291, 1999 WL 236119, at *1 (5th Cir. 1999) (citing *Heck v. Humphrey*, 512 U.S. 477, 480-82 (1994)). The writ of habeas corpus is the appropriate federal remedy for a state prisoner

1

challenging the fact or duration of his confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Deters v. Collins*, 985 F.2d 789, 792–96 (5th Cir. 1993).

Gibson sued newly-elected Criminal District Attorney Sorrells. Compl., ECF No. 1. Gibson characterizes his case as civil-rights complaint against Sorrells. *Id.* at 15, ECF No. 1. Review of the complaint, however, shows that Gibson also seeks to vacate the indictments and judgments in four state criminal cases he received in the 297th District Court, Tarrant County, Texas: Case Nos. 1277347D (possession with intent to deliver heroin), 1277348D (possession with intent to deliver cocaine), 1277349D (unlawful possession of a firearm), and 1369654D (aggravated assault with a deadly weapon-a firearm). *Id.* at 3.

Gibson is aware of the distinction between the types of cases, as he has filed both kinds of suits in this district. *See e.g., Gibson v. Hagerman*, No. 4:22-cv-0173-P (N.D. Tex. Nov. 30, 2022) (§ 1983 case); *Gibson v. Lumpkin*, No. 4:21-cv-1203-P (N.D. Tex. Nov. 2, 2021) (§ 2254 case). The documents Gibson filed in this case, however, reflect confusion. In documents filed after the motion to dismiss, Gibson appears to seek both kinds of relief. In an address update, Gibson expressly writes, "I ask the Courts to adhere to this request (to pursue a civil rights suit) . . . I am asking the court to proceed as this is a (Nature of Suit) 440 Civil Action Suit Gibson should be perceived as a (Nature of Suit) 550 due to incarcerated housing it is CIVIL SUIT." Address Update 4, ECF No. 9. Yet, in his response to Sorrells's motion to dismiss, Gibson challenges the sufficiency of his indictments and the state criminal court's jurisdiction. Response 2-4, ECF No. 10. Thus, the Court will address both of Gibson's attempts at relief.[1]

## II. MOTION TO DISMISS

---

[1] Gibson initially provided an address and phone number for a family member but has updated his address to a TDCJ unit. *See* https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05549752,

A. **Applicable Law**

1. Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is generally viewed with disfavor. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Court cannot look beyond the face of the pleadings in resolving a Rule 12(b)(6) motion. *Doe ex rel. Magee v. Covington Cnty., Sch. Dist.*, 649 F.3d 335, 341 (5th Cir. 2011) (explaining that "[w]e examine only the allegations within the four corners of the complaint"), *aff'd on rehearing en banc*, 675 F.3d 849 (5th Cir. 2012). A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the

---

last visited May 22, 2023.

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 555 (2007). Then, in *Ashcroft v. Iqbal,* the Supreme Court clarified that review of a 12(b)(6) motion is guided by two principles: (1) a court must apply the presumption of truthfulness only to factual matters and not to legal conclusions; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-680. If the pleadings fail to meet the requirements of *Iqbal* and *Twombly*, no viable claim is stated and the pleadings are subject to dismissal.

2.  Review of Records Referenced by Gibson

Although all well-pleaded facts are viewed in the light most favorable to the plaintiff, *see Bustos*, 599 F.3d at 461, "[w]here the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." *Martinez v. Reno*, No. 3:97-cv-813-P, 1997 WL 786250, at * 2 (N.D. Tex. Dec. 15, 1997) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). In his complaint, Gibson expressly challenges four separate convictions. Compl. 3, ECF No. 1. Gibson relies on those convictions. Also, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Also, documents attached to a rule 12(b)(6) that "are referred to in the plaintiff's complaint and are central to [his] claim[s]" are properly before a court. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Sorrells's appendix includes documents that are public records of which this Court may take judicial notice and are properly before the Court at the 12(b)(6) stage. *See Crawford v. Pitts*, No. 4:20-CV-1119-O, 2022 WL 479959, at

4

*2-3 (N.D. Tex. Feb. 16, 2022), *appeal dismissed*, No. 22-10245, 2022 WL 4079269 (5th Cir. Aug. 15, 2022). Also, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted). Therefore, the public conviction records are considered by the Court.

> **B.    Claims Seeking Relief as a Civil-Rights Action**
>
> > 1.    <u>Sovereign citizen/redemptionist-inspired claims are frivolous.</u>

Gibson's complaint, in part, appears to advance frivolous sovereign-citizen arguments in support of vacating his four criminal convictions. Compl. 2-9, 11-13, ECF No. 1. In addition to referring to his alleged rights under the Uniform Commercial Code ("UCC"), Gibson attempts to draw a distinction between "The Person of JAMALLE DONNTAI GIBSON" and "Jamalle Donntai Gibson"—the "Owner of the Property of the PERSONS OF JAMALLE DONNTAI GIBSON." Compl. 7, ECF No. 1. Gibson has also attached a UCC Financing Statement, in which Gibson has allegedly set up the "JAMALLE DONNTAI GIBSON TRUST©." *Id*. at 11-13. Furthermore, Gibson claims to be "executing the right of redemption." *Id.* at 3. In short, Gibson's complaint relies on arguments common to "sovereign citizen" or "redemptionist" movements—arguments that federal courts consistently reject.

"The sovereign citizen movement is a loose grouping of litigants, commentators, and tax protesters who often take the position that they are not subject to state or federal statutes and proceedings." *Porter v. Tex*., 729 F. App'x 358, 358 (5th Cir. 2018) (quoting *United States v. Weast*, 811 F.3d 743, 746 n.5 (5th Cir. 2016)). The Third Circuit has explained:

> "Redemptionist" theory ... propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly

5

> came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody.

*Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008) (per curiam). Those subscribing to the sovereign citizen or redemptionist theories further believe that when "[a] person's name is spelled . . . with initial capital letters and small letters, [it] represents the 'real person' . . . Whenever a person's name is written in total capitals, however, . . . only the 'strawman' is referenced, and the flesh and blood person is not involved." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 210 (D. Conn. 2010) (citations omitted).

Gibson's claim to a right to redemption (i.e., to have his four state criminal convictions vacated) arises solely out of a legally baseless and frivolous sovereign-citizen/redemptionist theory. Compl. 3, ECF No. 1. Based on the authorities cited above, the Court finds that Gibson's claims must be dismissed as irrational and wholly incredible. *See Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992); *see, e.g., Berman v. Stephens*, No. 4:14-cv-860-A, 2015 WL 3622694, at *2 (N.D. Tex. June 10, 2015) (collecting cases) ("His reliance on the UCC or a so-called 'sovereign citizen' theory that he is exempt from prosecution and beyond the jurisdiction of the state or federal courts is frivolous. The same or similar arguments have been repeatedly rejected by other courts and are rejected by this Court") (citations omitted).

   2.   <u>Absolute Immunity.</u>

To the extent Gibson sues Sorrells under § 1983 for any alleged constitutional violation arising out of Gibson's prosecution of him, all claims for monetary damages against Sorrells are barred by the doctrine of absolute prosecutorial immunity. Prosecutors are absolutely immune

from liability when performing their prosecutorial functions. *Imbler v. Pachtman*, 424 U.S. 409, 411 (1976). Federal law imports absolute immunity to prosecutors. Under the doctrine of prosecutorial immunity, a prosecutor is absolutely immune in a civil-rights lawsuit for recovery of monetary damages in an action taken in connection with a judicial proceeding. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Burns v. Reed*, 500 U.S. 478, 487–92 (1991). "[A]cts undertaken by the prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protection of absolute immunity." *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) (quoting *Buckley*, 509 U.S. at 273). Absolute immunity only protects individuals from claims for damages. *See Singleton v. Cannizzaro*, 372 F. Supp. 3d 389, 405 (E.D. La. 2019) (citations omitted).

Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case throughout the judicial process. *Graves v. Hampton*, 1 F.3d 315, 318 (5th Cir. 1993), *abrogated on other grounds*, *Arvie v. Broussard*, 424 F.3d 249, 251 (5th Cir. 1994). Thus, a prosecutor is immune from civil-rights liability for actions taken in connection with a judicial proceeding, even if taken maliciously. *Cousin v. Small*, 325 F.3d 627, 635 (5th Cir. 2003). The scope of what constitutes a prosecutorial function is broad. The duties of the prosecutor in his or her role as advocate for the state may include actions preliminary to the initiation of a prosecution, within the courtroom, and actions apart from the courtroom. *Imbler*, 424 U.S. at 431, n.33.

Gibson's allegations about Sorrells concern his indictments, pretrial proceedings, plea proceedings, and sentencing in state case numbers 1277347D, 1277348D, 1277349D, and 1369654D. Compl. 2, ECF No. 1. All of Gibson's allegations deal with prosecutorial functions

associated with the judicial process. *See Boyd*, 31 F.3d at 285 ("[A]cts undertaken by the prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his [or her] role as an advocate for the State, are entitled to the protection of absolute immunity."). As such, even taking Gibson's allegations as factually accurate, Sorrells is entitled to absolute immunity from any claims for monetary damages arising from his prosecutorial conduct.

### 3. Qualified Immunity.

Sorrells also argues that he is entitled to qualified immunity for other claims that arise from acts that he performed in the course of his administrative duties and investigatory functions that do not relate to the initiation of a prosecution. *See Singleton v. Cannizzaro*, 372 F. Supp. 3d 389, 405 (E.D. La. 2019) (noting the distinction between claims arising from prosecutorial functions subject to absolute immunity and claims arising from administrative functions subject only to qualified immunity) (citing *Loupe v. O'Bannon*, 824 F.3d 534, 538-39 (5th Cir. 2016) (internal citations and quotation omitted).

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370–71 (5th Cir. 2011). Officials are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). At the motion-to-dismiss stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*

*v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Here, Gibson does not plead any facts to show that Sorrells had any personal involvement in any alleged constitutional violation. Compl. 1, ECF No. 1; *see Wilson v. Nino*, No. 21-40024, 2022 WL 3098689, at *2 (5th Cir. Aug. 4, 2022); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Accordingly, Gibson fails to state any claims that overcomes Sorrells's alternate qualified immunity defense for any non-prosecutorial actions.

4. <u>Official Capacity Claim Barred by Eleventh Amendment</u>.

It appears Gibson named Sorrells simply because he is Tarrant County's elected criminal district attorney.[2] When acting in their official prosecutorial capacities, Texas criminal district attorneys are considered agents of the State of Texas, which are immune from claims for damages under the Eleventh Amendment. *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997); *see also Quinn v. Roach*, 326 F. App'x 280, 292–293 (5th Cir. May 4, 2009). The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

"The Eleventh Amendment acts as a jurisdictional bar to a suit in federal court against a state or one of its agencies . . . [t]his immunity applies unless it is waived by consent of a state or

---

[2] Gibson has not indicated the capacity in which he has sued Defendant Sorrells. Compl. 1-10, ECF No. 1; *see Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (explaining the difference between individual capacity claims and official capacity claims: "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'").

abrogated by Congress." *See Curry v. Ellis Cty., Tex.*, No. 3:08–cv–1675–L, 2009 WL 2002915, at *3 (N.D. Tex. July 10, 2009) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984)). Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–76 (2000), and the State of Texas may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecomms., Inc.*, 238 F.3d 636, 643 (5th Cir. 2001) (citation omitted), the State of Texas has not waived its immunity by consenting to suit, nor has Congress abrogated the immunity by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Thus, any official-capacity claim must be dismissed under Rule 12(b)(6) because the State of Texas is immune from suit. *See Quinn*, 326 F. App'x at 292–93.

### 5. Remaining Claims Barred by *Heck v. Humphrey*.

In this action, Gibson asserts a variety of constitutional claims against Sorrells that, at their core, challenge four state indictments and criminal convictions—convictions that arose out of Gibson's pleas of guilty. Compl. 2, ECF No. 1.[3] But Gibson does not allege that his convictions have been reversed or invalidated. *Id.* Rather, Gibson is attempting to hide the fact that he is still in prison while using this lawsuit as a vehicle to vacate his convictions. *Id.* Civil tort actions (such as Gibson's) are not appropriate vehicles for challenging the validity of outstanding criminal judgments, and a trial court must dismiss a plaintiff's complaints challenging his prior criminal conviction until the conviction has been invalidated. *See Heck*, 512 U.S. 477, 486-87 (1994). Gibson's claims should, therefore, be dismissed until he can

---

[3] *See* App. Ex.1 (Indictment, Plea Agreement, & Judgment of Conviction in Case No. 1277347), ECF No. 7-1; Exh. 2 (Indictment, Plea Agreement, & Judgment of Conviction in Case No. 1277348), ECF No. 7-2; Ex. 3 (Indictment, Plea Agreement, & Judgment of Conviction in Case No. 1277349), ECF No. 7-3; Ex. 4 (Indictment, Plea Agreement, & Judgment of Conviction in Case No. 1369654), ECF No.

demonstrate the *Heck* conditions are satisfied. *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (suggesting that an order dismissing claims due to *Heck* ahould be "dismissed with prejudice to their being asserted against under the Heck conditions are met.")

    **C.    Claims that Seek Habeas Corpus Relief**

        1.    <u>Gibson improperly seeks successive habeas relief.</u>

As noted above, Gibson raises challenges to the fact and legality of his current detention on the ground that his four state convictions were unlawfully obtained (despite Gibson's guilty pleas). Compl. 2-3, ECF No. 10; *see generally* Indictments, Plea Agreements, and Judgments, App. Ex. 1 (Case 1277347), ECF No. 7-1; App. Ex. 2 (Case 1277438), ECF No. 7-2; App. Ex.3 (Case 1277349), ECF No. 7-3; App. Ex.4 (Case 1369654), ECF No. 7-4. He also attempts to invoke Federal Rules of Civil Procedure Rule 60(b) and 60(d) to attack his underlying state court convictions. Compl. 1-2, ECF No. 10. To the extent Gibson is seeking to challenge the validity of his convictions, such claims must be treated as seeking habeas corpus relief, which is not cognizable in a civil-rights action seeking relief under 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Deters v. Collins*, 985 F.2d 789, 792–96 (5th Cir. 1993); *see, e.g., Chase v. Epps*, 74 F. App'x 339, 345 (5th Cir. 2003) ("A Rule 60(b) motion that purports to challenge the denial of a 28 U.S.C. § 2254 petition but actually attacks the underlying criminal conviction may be construed as a successive 28 U.S.C. § 2254 application") (citations omitted).

This Court has the option to sever Gibson's post-conviction habeas claims from this action. But a review of Gibson's history of seeking habeas corpus relief in the Northern District of Texas against the same underlying state court convictions counsels against a severance order.

7-4.

In this regard, the Honorable Judge Mark Pittman has already addressed Gibson's repetitive habeas complaints concerning the same state-court convictions. *See Gibson v. Lumpkin*, No. 4:21-cv-792-P, 2021 WL 4502302, at *3 (N.D. Tex. Sept. 30, 2021) (dismissing with prejudice Gibson's petition for writ of habeas relating to his state-court convictions in Case Nos. 1277347D, 1277348D, 1277349D, and 1369654D). Moreover, in a subsequent proceeding, Judge Pittman already transferred Gibson's successive petitions to the Fifth Circuit. *Gibson v. Director, TDCJ-CID*, No. 4:21-cv-1197-P, (N.D. Tex. Nov. 4, 2021) (Order of Transfer); *see generally In re Epps*, 127 F.3d 364, 365 (5th Cir. 1997) (recognizing that a district court can transfer a successive § 2254 petition). Subsequently, the Fifth Circuit ordered that Gibson's motion for authorization to file a successive 28 U.S.C. § 2254 application be denied. *In re Jamalle Donntai Gibson*, No. 21-11119 (5th Cir. Dec. 15, 2021). Accordingly, based upon Gibson's litigation history, the Court will dismiss Gibson's claims for habeas relief as improper successive habeas claims.

### IV.   CONCLUSION AND ORDER

For all of the above and foregoing reasons,

it is **ORDERED** that Defendant Phil Sorrells's motion to dismiss under Rule 12(b)(6) (ECF No. 6) is **GRANTED**.

It is further **ORDERED** that Plaintiff's civil-rights claims against Phil Sorrells are **DISMISSED with PREJUDICE** and, alternatively, **DISMISSED with PREJUDICE** to their being asserted again until the *Heck v. Humphrey* conditions are met. *See Johnson v. McElveen*, 101 F. 3d 423, 424 (5th Cir. 1996).

It is further **ORDERED** that Gibson's habeas corpus claims are **DISMISSED** as successive. This dismissal is without prejudice to Gibson's right to seek authorization from the

Fifth Circuit Court of Appeals to file a successive habeas corpus petition.

**SO ORDERED** on this **24th day** of **May, 2023.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**